UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL AULT,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

Hon. Ellen S. Carmody

Case No. 1:18-cv-38

# OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

# STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 24 years of age on his initial alleged disability onset date. (PageID.535). Plaintiff successfully completed high school and worked previously as a gambling dealer and delivery driver. (PageID.137). Plaintiff applied for benefits on April 10, 2013, alleging that he had been disabled since February 1, 1992, due to post-traumatic stress disorder, severe depression, loss of an eye, facial injuries, possible brain damage, chronic severe pain of the feet, ankles, and shins, chronic pain of the elbows and wrists, and multiple injuries to the neck and back. (PageID.535-45, 600). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.231-60, 351-441).

Following an August 14, 2014 administrative hearing, ALJ Janice Holmes determined that Plaintiff was not disabled. (PageID.44-56, 62-112). The Appeals Council declined to review the matter after which Plaintiff initiated action in this Court. (PageID.29-35). On April 25, 2016, the Honorable Janet T. Neff vacated the ALJ's decision and remanded the matter to the Social Security Administration for further action. (PageID.330-49). By the time the Court remanded this matter, Plaintiff had filed new claims for DIB and SSI benefits, alleging that he was disabled since May 24, 2012, due to post-traumatic stress disorder, severe depression, loss of the left eye, brain damage, fainting spells, dizziness, seizures, heart problems, and severe arthritis of the left knee. (PageID.564-79, 674). The Social Security Administration ordered that Plaintiff's various applications be consolidated into a single action. (PageID.124).

On November 18, 2016, Plaintiff appeared before ALJ Sarah Zimmerman with testimony being offered by Plaintiff and a vocational expert. (PageID.148-84). In a written decision dated February 28, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.124-39). The Appeals Council declined to review the ALJ's determination, rendering it

the Commissioner's final decision in the matter. (PageID.115-20). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2016. (Tr. 126). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

4

he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) epilepsy; (2) degenerative disc disease of the cervical, thoracic, and lumbar spine; (3) osteoarthritis; (4) alcohol/substance abuse disorder; (5) anxiety; (6) affective disorder; (7) loss of vision in the left eye; and (8) history of cerebral trauma, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.127-30).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) during an 8-hour workday, he can sit and stand/walk for 6 hours each; (3) he can frequently stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds; (4) due to the loss of field of vision in his left eye and limited depth perception of his remaining right eye he cannot perform commercial driving; (5) he cannot be exposed to hazards such hazardous heights and dangerous machinery, but he is able to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people and vehicles; (6) he is limited to understanding, remembering, and carrying out simple

instructions; (7) he can have occasional interaction with supervisors, co-workers, and the public; and (8) in addition to normal breaks, he will be off task for five percent of the workday. (PageID.130).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 482,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.178-80). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ also testified that if Plaintiff were further limited to a range of sedentary work there still existed approximately 325,000 jobs nationally which Plaintiff could perform.

6

(PageID.180-81). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

## I. Medical Evidence

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of Plaintiff's statements and treatment records. The ALJ described this evidence as follows:

> The record evidence shows the claimant suffered trauma to his head and lost his left eye in an industrial accident several years prior to the amended onset date (5F/I). In addition, he has been treated for epilepsy (27F/2).
>
> Despite the claimant's epilepsy and history of cerebral trauma, in March 2013, he demonstrated normal motor strength in his upper and lower bilateral extremities, and his sensation was intact (3F/4). The following month, the claimant was alert and oriented to person, place, and time; and he had no neurologic defects (3F/l). Likewise, in October 2013, the claimant was alert and oriented with no focal neurologic defects (9F/l). The claimant's 2014 treatment notes continued to show that he was alert and oriented with no neurological deficits (12F/2; 24F/6, 8, 11-12). In addition, in August 2014, Dr. Weiner indicated the claimant seemed to be doing fairly well (24F/10).
>
> In April 2015, the claimant suffered a fall after an episode of dizziness and lightheadedness (21F/10). He denied loss of consciousness (21F/10). A CT scan of the claimant's brain showed a stable nondisplaced right occipital bone fracture (21F/l). The scan was said to be a normal intracranial evaluation (21F/l). An MRI of the brain was also negative (21F/36). In addition, he was alert and oriented, his visual fields for his right eye were intact, there were no focal sensory or strength deficits, and his speech was normal (21F/4). An electroencephalogram was also performed, which was normal (21F/31). After a fall at Meijer, the claimant followed up with his physician, William Weiner, M.D., who conducted a neurological examination, which did not reveal any abnormalities (24F/14). In May 2015, Dr. Weiner noted that the claimant "seems to be doing better than his mother lets on" (22F/10).
>
> In June 2015, the claimant's treatment notes showed he had been started on Keppra and that he reported he thought he was doing

better and had not since fallen (22F/14). The following month, the claimant was alert and oriented with no focal neurological deficits (22F/15). Upon examination, and he demonstrated normal power in his upper and lower extremities with no pronator drift (26F/2). In addition, his sensation to pinprick was normal, his gait and stance were normal, and he had normal coordination (26F/2).

In October 27, 2015, the claimant presented to Dr. Weiner and alleged he had a seizure that day (27F/l). However, his cognitive examination was grossly normal (27F/2). On February 1, 2016, Kevin Kellogg, M.D. indicated that the claimant had not had any seizures since September 2015 and that he was tolerating Depakote (29F/l). Dr. Kellogg indicated the claimant had only one episode of buzzing in his ears without collapse (29F/l). On February 3, 2016, the claimant presented to Dr. Weiner and indicated that Depakote seemed to be working (30F/l). He went on to state that he had a couple "ear ringers" but nothing major, and he thought his dizzy spells were clearing up (30F/1). Dr. Weiner conducted a neurological examination, which was normal (30F/2). The record outlined a history of seizures; however, the claimant's neurological examinations throughout the record were generally unremarkable, and his seizure medication resulted in an improvement of symptoms.

The claimant also has a history of degenerative disc disease of the lumbar and cervical spine, as well as osteoarthritis of the left knee (6F/l; 16F/3). June 2013 imaging of the lumbar spine showed moderate degenerative facet joint arthropathy of the lower lumbar spine (16F/6). Imaging of the cervical spine revealed evidence of a "mild" posterior disc bulge at C4 to C5 causing partial effacement of the CSF space anterior to the cord (16F/3). There was also a "mild to moderate" posterior disc bulge at C6 to C7 causing effacement or near effacement of the CSF space anterior to the cord without obvious cord compression (16F/4). A November 2015 X-ray of the cervical spine showed only "mild" degenerative changes at C6 to C7 with no acute bony abnormality (28F/5).

In October 2013, the claimant asked for an injection in his left knee (24F/l). His January 2014 treatment notes indicated that the injection in his left knee provided "very good relief' (24F/3). In February 2014, the claimant stated he was wading out in deep snow and twisted his left knee (13F/3). He was diagnosed with internal derangement of the left knee (13F/4). An X-ray of his left knee was negative for acute findings, and he had full extension with some discomfort in flexion (13F/4, 12). In April 2014, the claimant did not request another injection, and Dr. Weiner noted the previous injection had provided six months of good relief and with continued

improvement (24F/5). Upon examination in July 2014, his left knee showed only "slight crepitance" without edema in any extremities (24F/8). Furthermore, in April 2015, he demonstrated good range of motion in all major joints (21F/4).

A November 2015 X-ray of the claimant's lumbar spine did not reveal any bony abnormality or significant degenerative disease (28F/6). Imaging of his thoracic spine showed only "minor degenerative marginal spurring" without acute compression fractures of subluxations (28F/7). Despite the degenerative changes in his spine and left knee, in February 2016, the claimant demonstrated normal gait and stance and coordination (29F/l). The undersigned has accounted for the claimant's degenerative disc disease and osteoarthritis of the left knee by limiting him to the light exertional level with the aforementioned postural limitations.

The evidence of record outlines a history of anxiety and depression. Despite these diagnoses, throughout the record, the claimant presented with normal affect (3F/l, 6, 8; 4F/l; 6F/l, 3; 9F/l; 12F/2; 15F/2; 21F/4; 22F/l l, 15; 24F/12, 14). The claimant was prescribed Celexa for these mental impairments, but he reported adverse side effects. Consequently he was prescribed Wellbutrin (3F/l). During a follow-up visit in May 2013, his treatment notes indicated that he seemed to be improved in "some respects" on his new medication (4F/l).

In June 2013, the claimant attended a psychiatric consultative examination with David Cashbaugh, Jr., LLP. He reported that Wellbutrin "kind of' helped make his body less tense (5F/I). He went on to state that he was not taking any other medications (5F/I). In addition, he stated his only medical provider was his treating physician, Dr. Weiner. The claimant indicated he had three children aged 12, 15, and 16, and that his wife of twelve years had recently passed away so he was the sole caretaker for all three children (5F/2). He reported that he had looked for work for the past couple years with the last job application being January or April 2013 (5F/2). He indicated that he was normally in an angry mood, he was nervous, and had anxiety; however, he denied suicidal ideation, and he stated he never had any type of psychiatric admission (5F/4). Dr. Cashbaugh noted the claimant was able to bend to pick up dropped keys and get in and out of his chair without apparent difficulty at the beginning and end of the examination (5F/5). Dr. Cashbaugh also indicated the claimant was able to interact appropriately, and although his mood and affect were down, he did not seem overly emotional (5F/5). He diagnosed the claimant with generalized anxiety disorder and major depression (5F/6).

> The claimant's June 2013 treatment notes indicated he was doing better with depression with no medication side effects (6F/3). In June 2015, the claimant demonstrated normal attention span (26F/2). In October 2015, the claimant's mood and affect were within normal limits, and he was cooperative (27F/2, 5). In addition, he reported his new relationship was going well (27F/4). In February 2016, the claimant reported having only some "moments of depression" (29F/l). He was oriented with normal recall, attention span, and fund of knowledge (29F/1).
>
> Regarding substance abuse, the claimant indicated that he had two impaired driving charges, and that although he was drinking "off and on" in the 1990s, he was no longer consuming alcohol (5F/2). At the hearing, the claimant testified that he only consumes alcohol on "rare occasions." He also testified that he has a medical marijuana card, but that he not been using marijuana recently. There is no evidence suggesting that the claimant's alcohol or drug use has contributed to or exacerbated any of his impairments. The undersigned further notes that a materiality determination is not necessary here because the claimant is not disabled even considering any substance abuse (SSR 13-2p).

(PageID.131-33).

## II.      The ALJ Properly Assessed the Medical Opinion Evidence

As detailed below, Dr. Weiner and Dr. Kellogg offered opinions regarding Plaintiff's impairments and limitations which suggest that Plaintiff is more limited than the ALJ recognized. The ALJ, however, afforded little weight to these opinions. Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his doctors' opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the

opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

A. Dr. Weiner

On July 17, 2014, Dr. Weiner completed a "medical source statement" regarding Plaintiff's impairments and limitations. (PageID.882-84). The doctor reported that Plaintiff experienced "marked" difficulty dealing with "ordinary work stress." (PageID.883). The doctor also reported that during an 8-hour workday, Plaintiff would be "off-task" for "3 or more hours" and would "need to lie down at unpredictable intervals." (PageID.883). The ALJ afforded this opinion "little weight." (PageID.134).

In support of her decision to discount Dr. Weiner's testimony, the ALJ stated that the doctor's opinion "is vague and not generally in line with the evidence of record, including Dr. Weiner's own objective examination findings." (PageID.134). The ALJ then detailed the medical evidence supporting her conclusion. As the ALJ observed, Plaintiff's depression and anxiety improved with medication and Dr. Weiner consistently observed no evidence that Plaintiff was experiencing an emotional impairment that limited him to a greater extent than the ALJ

recognized. (PageID.776-77, 789-92, 804-05, 813-16, 885-86, 960-65, 993-1011, 1033-55, 1085-89). With respect to Plaintiff's left knee, x-rays were "negative," physical examination revealed only minimal findings, and Plaintiff reported that he obtained "very good relief" with treatment. (PageID.815, 878, 885, 887).

MRIs, CT-scans, and x-rays of Plaintiff's spine consistently revealed, at most, moderate findings and certainly nothing which supports Dr. Weiner's opinion or which is inconsistent with the ALJ's RFC finding. (PageID.850-51, 889-92, 1078-80). Likewise, imaging of Plaintiff's brain and head revealed nothing which supports Dr. Weiner's opinion or which is inconsistent with the ALJ's RFC finding. (PageID.826, 849, 853, 863). The results of echocardiogram and electrocardiogram testing were unremarkable. (PageID.978-83, 986). Finally, Plaintiff's epilepsy, diagnosed subsequent to Dr. Weiner's opinion, was well controlled once Plaintiff received appropriate medication, as discussed immediately below. (PageID.1018, 1036, 1039, 1074, 1082, 1085). As the evidence reveals, substantial evidence supports the ALJ's decision to afford little weight to Dr. Weiner's opinion. This argument is, therefore, rejected.

B. Dr. Kellogg

In an undated "medical source statement," Dr. Kellogg reported that Plaintiff suffers two epileptic seizures weekly and would, therefore, be absent from work "about once a month." (PageID.1111). The ALJ afforded Dr. Kellogg's opinion "little weight." (PageID.134). Dr. Kellogg diagnosed Plaintiff with epilepsy in June 2015 and began treating Plaintiff with medication. (PageID.1018-19). Treatment notes dated October 1, 2015, indicate that Plaintiff's epilepsy was "poorly controlled" and, therefore, his medication was modified. (PageID.1074). On February 1, 2016, Dr. Kellogg reported that Plaintiff "has had no seizure since

13

September 2015." (PageID.1082). Two days later, on February 3, 2016, Plaintiff told Dr. Weiner that his seizures were controlled with his new seizure medication. (PageID.1085).

Simply put, the opinions in Dr. Kellogg's medical source statement are contradicted by the doctor's own treatment records and other medical evidence. The ALJ's decision, therefore, to afford limited weight to Dr. Kellogg's opinions is supported by substantial evidence. This argument is, therefore, rejected.

**III.     The ALJ's RFC Assessment is Supported by Substantial Evidence**

Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment failed to incorporate the work restrictions articulated by Dr. Weiner and Dr. Kellogg. As discussed above, the ALJ properly disregarded the opinions in question. Thus, it was not error for the ALJ to not incorporate such into her RFC assessment. The ALJ's RFC is supported by substantial evidence, as the discussion of the medical evidence above reveals. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Dated: March 27, 2019                              /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge